UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Maria Amplatz,                                                       Civ. No. 12-1758 (PAM/JSM)

                Plaintiff,

v.                                                        **MEMORANDUM AND ORDER**

Country Mutual Insurance Company,

                Defendant.

---

       This matter is before the Court on Defendant Country Mutual Insurance Company's Motion for Summary Judgment and Plaintiff Maria Amplatz's Motion for Partial Summary Judgment. For the reasons that follow, Defendant's Motion is denied and Plaintiff's Motion is granted.

**BACKGROUND**

       Plaintiff Maria Amplatz owns three rental properties in Mound, Minnesota, and one in Maple Plain, Minnesota. (Compl. ¶ 1.)[1] The parties refer to these properties as: (1) the Game Farm Property, located at 1150 Game Farm Circle; (2) the Cherry Property, located at 3838 Cherry Avenue; (3) the Farmhill Property, located at 3650 Farmhill Drive; and (4) the Lakeshore Property, located at 2857 Lakeshore Avenue in Maple Plain. Amplatz maintained commercial insurance on the properties through Defendant Country Mutual Insurance Company. (Id. ¶ 4.) The policy at issue here covered the period from February

---

[1] The Complaint avers that all four properties are located in Mound, but Amplatz's briefing describes one property as located in Maple Plain. (Pl.'s Opp'n Mem. (Docket No. 128) at 2.)

2010 through February 2011.  (Id.)

In July 2010, all four of Amplatz's properties sustained damage from a severe hail-producing thunderstorm.  (Id. ¶ 5.)  There is no dispute that the storm was an event for which the policy provided coverage.  The only dispute is how much Country should pay for the damage under the policy.  Amplatz contends that the policy provided for replacement cost value coverage for her properties.  Country acknowledges that the policy so provided, but asserts that Amplatz was required to affirmatively elect replacement cost value coverage, as opposed to actual cash value coverage, and that Amplatz failed to do so.  In addition, Country claims that Amplatz cannot receive replacement cost value for the damage because she did not have the damage repaired within a reasonable time, as the policy required.  Country paid Amplatz what it deemed the actual cash value; Amplatz contends that the difference between actual cash value and replacement cost value is more than $300,000.

Although both parties seek summary judgment, they do not dispute that substantial factual questions remain that a factfinder must resolve.  Country asks the Court to order that any damages Amplatz can prove at trial should be limited to actual cash value, and Amplatz seeks judgment on her claim that she is entitled to replacement cost value in an amount to be established at trial.

**DISCUSSION**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must view the evidence and inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. Enter. Bank v. Magna Bank, 92 F.3d 743, 747 (8th Cir. 1996). However, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Id. at 323; Enter. Bank, 92 F.3d at 747. A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

**A.    Election of Coverage**

There is no dispute that Amplatz's policy provided for replacement cost coverage for damage to her properties, rather than the actual cash value coverage the typical commercial insurance policy provides. In relevant part, Amplatz's policy provided:

    a.      Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Loss Condition, Valuation, of this Coverage Form.

\* \* \* \*

    c.      You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this Option Coverage provides if you notify us of your intent to do so within 180 days after the loss or damage.

(Simpson Decl. Ex. C at C-69 - C-68.)[2]

Country argues that the policy required Amplatz to affirmatively elect replacement cost coverage, and that her failure to do so within 180 days of the loss means that she can only receive actual cash value. In support of this argument, Country points to letters it wrote to Amplatz during the claims-adjustment process that ostensibly informed her of her purported duty to elect replacement cost value coverage. (E.g., Simpson Aff. Ex. F.) Country's contention is that, because Country decided to adjust Amplatz's claim on an actual cash value basis rather than replacement cost value basis, and because Country informed Amplatz several times that it was doing so, the terms of the policy do not control.

Country offers no legal authority for its suggestion that the Court may ignore the clear language of the policy. And the policy language here is clear: Amplatz is entitled to receive replacement cost value unless she affirmatively elects actual cash value. See, e.g., Constr.

---

[2] These pages are out of order in the Simpson Declaration. Page C-69 is the page before page C-68 in the policy. Indeed, the entire 14-page coverage form from this section of the policy was apparently copied backwards: it begins on C-81 (with page 1 of 14) and ends on C-68 (with page 14 of 14).

Sys., Inc. v. Gen. Cas. Co. of Wis., No. 09-3697, 2011 WL 3625066, at *16 (D. Minn. Aug. 17 2011) (Kyle, J.) (noting that policy language identical to that here made replacement cost recovery the "default" recovery). Amplatz did not elect actual cash value, so Country was obligated to provide replacement cost value, unless Amplatz did not otherwise meet the policy's requirements for such coverage.

**B.     Requirements for Replacement Cost Coverage**

Country's second argument is that the policy allows Country to pay actual cash value and not replacement cost value for the damage to Amplatz's properties because Amplatz did not undertake repairs to those properties within a reasonable time. According to Country, as of July 2013, Amplatz had not made any repairs to three of the four damaged properties. (See Simpson Decl. Ex. J (Amplatz Dep.) at 55, 67, 107-08, 118, 124 (Amplatz testifying that at the time of her deposition July 2013, the damaged properties had not been repaired or she did not know whether they had been repaired).) Amplatz disputes that she has failed to make repairs. She contends that she has made significant repairs, but admits she has not made all the repairs her expert recommends. She argues that she has been unable to have the repairs performed because Country has not agreed that the policy covered all items of damage.

The policy provides that Country "will not pay on a replacement cost basis for any loss or damage: (1) Until the lost or damaged property is actually repaired or replaced; and (2) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage." (Simpson Decl. Ex. C. at C-68.) Country asks the Court to determine as a

matter of law that any repairs not made by July 2013 are not "as soon as reasonably possible" after the damage, although Country reserves its right to define the policy's required time limit differently at trial.

Country has not pointed to any provision in the policy that specifically provides that an insured's failure to make repairs "as soon as reasonably possible" results in the insured receiving only actual cash value for the damage, rather than replacement cost value. The instant situation is therefore unlike that in Saathoff v. Country Mutual Insurance Co., 886 N.E.2d 370 (Ill. Ct. App. 2008), on which Country relies. The policy in Saathoff provided that if the insured did not repair or replace the damaged property, the insurer would settle the claim on an actual-cash-value basis. Id. at 376. Thus, Saathoff does not support Country's position regarding actual-cash-value payments.

But the crux of the parties' dispute is not merely whether Country was entitled to pay Amplatz actual cash value rather than replacement cost value. The parties also fundamentally disagree about the scope of coverage the policy provided. In particular, Country disputes whether the policy covers water damage to the interior of Amplatz's properties. Amplatz contends that the hail-damaged roofs allowed water into the properties, and that the damage the water caused is damage resulting from the covered hail storm. Country argues that any water intrusion was a result of Amplatz's failure to properly maintain the properties and is not covered by the policy

Amplatz argues that she could not afford to make any repairs until she and Country agreed on the scope of the policy's coverage because Country's repair estimates were so far

6

below the repair estimates she received.  As an example, she points to the Game Farm Property, which incurred serious damage to a copper roof and a cedar shake roof as well as to a solarium.  Country estimated the damage to this property at less than $15,000.  (Simpson Decl. Ex. F.)  On the other hand, Amplatz's expert witness estimates that the replacement cost, including repairing the extensive damage to the property's interior that was allegedly caused by the roof's failure, is more than $200,000.  (Hage Decl. Ex. D.)  Amplatz notes that Country's coverage letters warned her not to undertake any repairs to which Country had not agreed because doing so would expose Amplatz to the risk that Country would not pay for those repairs and Amplatz would be required to bear the expense alone.  (Simpson Decl. Ex. F.)

Country believes that Amplatz should have paid to have the properties repaired or replaced and worked out the details of coverage later, but that is not what its letters to Amplatz told her to do.  Moreover, Country mischaracterizes Amplatz's argument in this regard.  According to Country, Amplatz is seeking to raise a claims-handling claim, something that Magistrate Judge Mayeron determined would be futile in this case.  But Country overlooks both its own statements about the coverage issue as well as the significance of the policy's subjective standard: what is "as soon as reasonably possible" in one case may not be "as soon as reasonably possible" in another.  Here, whether the repairs were accomplished "as soon as reasonably possible" may depend on the parties' understandings about what damage the policy did and did not cover. Given the difference between Country's estimate of the total damage to the four properties, which was well below

$100,000, and Amplatz's expert's estimate, which was more than $350,000, a jury could reasonably determine that Amplatz's unwillingness to undertake repairs without Country's assurances as to coverage did not violate the policy's terms.

**CONCLUSION**

Amplatz has established that she is entitled to replacement cost value coverage for any covered loss. As the parties recognize, however, a factfinder must determine the remaining issues at trial.

Accordingly, **IT IS HEREBY ORDERED that**:

1. Defendant's Motion for Summary Judgment (Docket No. 114) is **DENIED**; and

2. Plaintiff's Motion for Partial Summary Judgment (Docket No. 123) is **GRANTED**.

Dated: October 21, 2014

*s/ Paul A. Magnuson*
Paul A. Magnuson
United States District Court Judge